LAWRENCE A. ORGAN (SBN 175503)
JULIANNE K. SCHWARZ (SBN 290001)
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
407 San Anselmo Avenue, Suite 201
San Anselmo, CA 94960
Tel. (415) 453-4740
Fax (415) 785-7352

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOUR DIRECTIONS, INDIAN PEOPLE'S ACTIONS, SARA PLAINS FEATHER, CLIFFORD BIRD IN GROUND<br><br>　　　　　Petitioners,<br><br>　vs.<br><br>　　　　COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, CATHY A. CATTERSON in her official capacity The Office of the Circuit Executive Cathy A. Catterson, Circuit and Court of Appeals Executive, U.S. Courts for the Ninth Circuit<br><br>Respondents. | **Case No.:** 4:14-cv-03022-YGR<br><br><br>**PETITIONER'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED PRE-COMPLAINT PETITION TO PRESERVE EVIDENCE**<br><br><br>Date: January 13, 2015<br>Time: 2:00 p.m.<br>Place: Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, California<br><br>Honorable Yvonne Gonzalez Rogers |

PETITIONERS FOUR DIRECTIONS ET EL, REPLY AND OPPOSITION TO CROSS MOTION

## I.     INTRODUCTION

The Fifth Amendment to the United States Constitution provides:  "No person shall be . . . deprived of life, liberty, or property, without due process of law . . .."  U.S. CONST. amend. V.

Due Process relates to the administration of justice, and thus the due process clause acts as a safeguard from arbitrary denial of life, liberty, or property by the Government outside the sanction of law.  In 1855, the Supreme Court explained that, to ascertain whether a process is "due process," the first step is to "examine the constitution itself, to see whether this process be in conflict with any of its provisions."  *Den ex dem. Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 277, 15 L. Ed. 372 (1855).

Respondent United States fails to address the legal standards raised and the additional evidence provided to this Court.  Specifically, Petitioner's seek redress of their Fifth Amendment right to Due Process.  Defendant does not address this at all in its papers, instead focusing on only two legal theories potentially advanced by the First Amended Petition (hereinafter "FAP").  More importantly, Respondent ignores the evidence already provided to the Court in the Exhibits to the Request for Judicial Notice. These papers made public by the Judicial Council of the Ninth Circuit make clear that Judge Richard Cebull (Ret.) evidenced a discriminatory bias against Native Americans. (See Doc. 21, Ex. B p.5)   The rights asserted then are fundamental and based on the Constitution of the United States.  When weighed against these rights, the Government's claims of confidentiality and immunity simply have no place and no legal merit.

This action concerns a petition to ***preserve*** the facts in The File[1] about a racist Federal Judge, who for at least 4 years, if not an entire decade, was demonstrably bigoted

---

[1] In the Petition, Petitioners identify the "notes, records, interviews, subject emails, etc.," as the File (See First Amended Petition (FAP) ¶2) subject to the request to preserve.  With these Opposition papers, Petitioners hereby limit the scope of the file solely to the emails to and from Judge Cebull as contained in the "File."

1
PETITIONER FOUR DIRECTIONS ET EL, REPLY AND OPPOSITION TO CROSS MOTION

towards African Americans, Latin Americans, and Native Americans and clearly did not protect their legal rights.  Defendant's three arguments for granting its motion fail.

Defendant's argument that the documents are confidential and not subject to disclosure under 28 U.S.C. §360(a) fails on two grounds.  First, the Emails which are primarily the target of the instant Petition are not confidential and are direct evidence of racial bias, and therefore they are not subject to the protections of section 350.  Second, to the extent federal law requires confidentiality of racist emails which would prohibit litigants from obtaining their Due Process rights under the Fifth Amendment, the law is unconstitutional and cannot stand.

Defendant's argument that there is no cognizable claim ignores the requirements of the Fifth Amendment Due Process clause.  The Due Process Clause itself provides the Constitutional and legal basis to require disclosure of the racist emails.

Defendant's argument that this Petition is an attempt to get "pre-complaint discovery" is simply wrong.  Petitioners merely seek an order from the Court preserving the emails contained in the File.

Finally, it is self-evident that a lack of impartiality by a judge cannot be countenanced in our judicial system, and biased decision-making in our courts is justice denied.  In addition, Rule 27 provides a mechanism for preserving evidence in the interests of justice.  To the extent the Court finds that Rule 27 does not apply, the Court should use its inherent equitable powers to order that the emails at issue be preserved.

## II.     ARGUMENT[2]

Mr. Justice Black speaking for the Supreme Court held that

[a] fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases

---

[2] Petitioners hereby incorporate the arguments from thier prior Opposition (Document 20) and from the arguments made during oral argument.

PETITIONER FOUR DIRECTIONS ET EL, REPLY AND OPPOSITION TO CROSS MOTION

where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered.
In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 625, 99 L. Ed. 942 (1955)

It is settled law that racial bias can play no role in finder of facts deliberative processes. *Batson v. Kentucky*, 476 U.S. 79, 85, 106 S. Ct. 1712, 1717 (1986) holding modified by Powers v. Ohio, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) [racial discrimination in jury selection offends the Equal Protection Clause].  Due Process then requires both the existence of impartiality as well as the appearance of impartiality.

Mr. Justice Kennedy has more recently opined that "Courts, in our system, elaborate principles of law in the course of resolving disputes. The power and the prerogative of a court to perform this function rest, in the end, upon the respect accorded to its judgments. The citizen's respect for judgments depends in turn upon the issuing court's absolute probity. Judicial integrity is, in consequence, a state interest of the highest order." *Republican Party of Minn. v. White,* 536 U.S. 765, 793, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (KENNEDY, J., concurring).

The ethical rules that guide all lawyers make clear that members of the Judiciary must be unbiased individuals.  ABA Code of Judicial Conduct, Canon 3C(1)(a) (1980) states that "[a] judge should disqualify himself ... where he has a personal bias or prejudice concerning a party."

Judges must take an oath of impartiality.  They must affirm that they will "administer justice without respect to persons" which means that they must not consider any immutable characteristics of a person appearing before them.  28 U.S.C. §453.

The subject emails – sent and received from a Court computer, from a Court email address – do not create a reasonable expectation of "privacy" nor are they subject to privacy statutes.  They are documents created in the public domain on a public computer sent over public email.  Judge Cebull's pivotal role in sending and receiving and commenting in racist, bigoted, misogynist emails, created a constitutionally intolerable probability of actual bias against Plaintiffs.  This is precisely the type of evidence that

3
PETITIONER FOUR DIRECTIONS ET EL, REPLY AND OPPOSITION TO CROSS MOTION

could support a finding of judicial bias.  *Berger v. United States*, 255 U.S. 22, 31, 41 S. Ct. 230, 232 (1921).  Further, there is an unconstitutional potential for bias demonstrated in The File and then The File results.

The fact that these emails were subsequently included in an investigation of Judge Cebull does not transform their character or make them subject to expectations of privacy.  They are prima facie evidence of bias and therefore must be subject to discovery to protect Constitutional protections of Due Process.

The actual violation of Due Process must be addressed at some time.  But prior to any discussion of the legal basis for such a challenge, any relevant evidence must be preserved.  That is all Petitioners seek to do with the instant petition.

A.      **The Requested Emails Created by Judge Cebull Before any Judicial Inquiry into his Racial Bias Are Not Confidential**

Relying on 28 U.S.C. section 360, Respondent argues that the requested information is  "confidential and prohibited from disclosure by statute."  (Mot. P.3:3) But by narrowing the scope of what Petitioners are seeking, there can be no doubt that the emails Petitioners seek to preserve are not confidential documents.  They are not part of a judicial proceeding but rather facts that pre-date any official action by the Judicial Council of the Ninth Circuit.  Therefore, this Court need not speculate as to whether or not the documents at issue are part of the investigation because they are facts external to the investigation.  Accordingly, section 360 does not protect facts and documents that were not created as part of the investigation process.

Just like a defendant cannot hide a gun used to commit a crime by handing it to his attorney, the Government cannot seek to make public documents evidencing judicial bias confidential just because they were analyzed as part of an investigation into the racial bias of the judge.  To do so would be the very essence of denying due process to those hundreds of litigants who were denied due process by having a Judge who was inherently biased against them based solely on their national origin and race.

4
PETITIONER FOUR DIRECTIONS ET EL, REPLY AND OPPOSITION TO CROSS MOTION

1

2    **B.  Respondent Ignores Petitioners' Amended Reliance on First Amendment**

3         **Rights**

4         The Crow Tribe, one of the represented parties to this action, has its own

5    Newspaper.  (FAP ¶3)  Respondent goes to great lengths to distinguish *Cox v. McClean*,

6    No. CV 14-199-M-DLC, 2014 WL 4824808 (D.Mont. Sept. 30, 2014) from the instant

7    case.  (Mot.P.3)  Respondent points out that the instant case is distinguished from *Cox*

8    because *Cox* involved First Amendment rights, and presumably, those are somehow

9    different from Fifth Amendment rights to Due Process.  Ignoring that fallacy, the Court

10   can simply reject this argument on its face.  In the First Amended Petition, Petitioners

11   make clear that the Native American tribes have tribal newspapers and that they are

12   seeking access to the emails as part of the their First Amendment rights to free speech

13   and press.  (See FAP ¶¶3, 14.c.)

14        Respondent also seeks to distinguish *Cox* by arguing that the confidentiality

15   statutes are applied in different ways because the statute was used to restrain a party from

16   disclosure in one instance and here it restrains the Government from producing the

17   documents.  There simply is no different in the type of conduct at issue and more

18   importantly, the principle at issue is that the Constitutional provision trumps the

19   regulatory provision.  Accordingly, the Constitutional requirement under the Fifth

20   Amendment trumps any non-disclosure requirement of 28 U.S.C. §360.

21   **C.  Respondent Ignores Petitioners' Fifth Amendment Due Process Claims and**

22        **First Amendment Rights**

23        Petitioners, like the Plaintiff in *Cox*, have articulated a First Amendment interest in

24   the racist emails by the Crow Tribe's newspaper.  (See FAP ¶¶3, 14.c.)  In addition,

25   Petitioners have maintained throughout this process that they have a Due Process right to

26   an unbiased judge.  Federal jurisdiction clearly exists for any causes of action that arise

27   directly under the U.S. Constitution.

5

PETITIONER FOUR DIRECTIONS ET EL, REPLY AND OPPOSITION TO CROSS MOTION

With respect to Respondent's arguments are 42 U.S.C. §§ 1981 and 1983, it appears that Respondent is correct that the U.S. Government is not subject to those Reconstruction Era statutory protections,  but that is not fatal to the instant petition or to Petitioners' future claims.  The Constitutional questions as well as habeas corpus relief sought on behalf of Petitioner Clifford Birdinground, there is sufficient legal grounds for establishing Petitioners' standing.

**D.  Judge Cebull's Emails Establish His Racial Bias and Support a Claim of Denial of Due Process**

As noted above, our Supreme Court recognizes that Due Process requires a "fair" tribunal.   See *In re Murchison* at 136.  Denial of a fair hearing by a biased judge subjects any act by that judicial officer to a due process challenge.  For example, in a case where a Supreme Court Justice for West Virginia had received significant campaign contributions from a litigant who shortly thereafter appeared before him, the U.S. Supreme Court ruled that should have recused himself as matter of due process and that failure to do so violated notions of due process.  *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868, 129 S. Ct. 2252 (2009).  Noting that "[i]t is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'"  *Caperton*, 556 U.S. at 876.  As a result, the judgment of the West Virginia Supreme Court of Appeals was reversed and the case remanded for a new hearing without the recused judicial officer.  *Id*. at 890.

The evidence to date on Judge Cebull establishes that he showed "disdain for Blacks, Indians, Hispanics" and other protected classes of people.  The emails that Petitioners seek to preserve then could be direct evidence of actual bias by Judge Cebull.  Were Petitioners able to prove this through the actual emails, their members could file claims that they were denied Due Process in their sentencing procedures or where Judge Cebull ruled in a bench trial.

PETITIONER FOUR DIRECTIONS ET EL, REPLY AND OPPOSITION TO CROSS MOTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**E.  Judge Cebull's Racial Bias Directly Impacted Petitioner Clifford Birdinground and Denied Him His Due Process Rights**

Native American, Clifford Birdinground, was before Judge Richard F. Cebull for over 3 1/2 years, culminating on December 11, 2006.  In his appearance(s) before Judge Cebull, hearings and pleadings involved his efforts to withdraw an uninformed guilty plea - Judge Cebull refused and imposed, 3 years and one month in prison.  Judge Cebull set free the three non-American Indian defendants by dismissing the government's case under a Rule 29(a).  But when Judge Cebull ordered Clifford Birdinground to prison he told the world Clifford Birdinground was guilty of numerous uncharged crimes, which Judge Cebull said demonstrated Clifford Birdinground's widespread corruption at the expense of his people.  This was simply incorrect.

According to the Investigative file into Judge Cebull, apparently at that time frame which he was sentenced, Judge Cebull may have been emailing racist and bigoted emails about minorities, including Native Americans.  These examples - among others - of questionable judicial action, raise the actionable possibility Judge Cebull sentenced Petitioner Birdinground based on a bias against American Indians.  Accordingly, Petitioner would like the emails preserved so that he can later determine if there is evidence of an actual bias in his particular case or whether there is evidence of a general bias that might have impacted his case.  Accordingly, he will be filing a 28 U.S.C. § 1651 petition of writ for *coram nobis.*

**F.  Sufficient Facts Exist To Find Associational Standing**

Respondent again attacks Petitioners' associational standing, but the additional facts plead in the FAP are sufficient to prevail soling on the First Amendment argument alone.  As noted in the Petition, the Creek Tribe has a newspaper.  (FAP ¶3)  The Creek Tribe is a member of COLT which has interests similar to Four Directions.  (FAP ¶10)  The Government essentially concedes there is a cognizable interest in this type of information under the First Amendment.  (See Mot. A, pp.3-4)  Because it is a newspaper

PETITIONER FOUR DIRECTIONS ET EL, REPLY AND OPPOSITION TO CROSS MOTION

at issue, certainly there is no need for individual members to participate in the litigation. Accordingly, with respect to this issue, Petitioners have met the associational standing requirement.

### G. Petitioners Do Not Seek to Obtain Improper Pre-Complaint Discovery

The Judicial Council for the Ninth Circuit has already disclosed that Judge Cebull sent racist emails that evidence a bias against Native American people among others. So the general content of the emails at issue is not to be questioned. Accordingly, Rule 27 can be used to preserve evidence that might otherwise be lost. The only place Petitioners are aware the emails exist is with the clerk of the Ninth Circuit. If those emails are lost, there could be irreparable harm because Petitioners and similarly situated parties in Montana could be adversely impacted by having their Constitutional rights violated without legal recourse. The current petition before this Court does not seek any discovery as to the contents of the racist emails that Judge Cebull sent. Petitioners do not seek to depose anyone, nor to obtain physical possession of any of the emails. Accordingly, Respondent's objection (Mot. at pp.5-6) is premature.

### H. If the Court Does Not Preserve the Email, Justice Could Be Delayed or Denied

Respondents ignore fundamental nature of the matters at issue here. Petitioners and their members have Constitutional rights to Due Process under the Fifth Amendment. These rights are not protected if they were adversely impacted by a racist, sexist jurist. The March 15 Order notes that the emails it reviewed only went back to 2008 because that is period for which the backup tapes were maintained. (March 15 Order at p.4) Given the plethora of racist and sexist emails, it is likely that Judge Cebull engaged in similar conduct prior to 2008, but that evidence is now lost. This merely highlights that justice may be denied if these records are not maintained. Respondent offers no evidence that the Government has taken any steps to preserve the racist and sexist emails. In addition, it is highly questionable that Petitioners could discover this information from

PETITIONER FOUR DIRECTIONS ET EL, REPLY AND OPPOSITION TO CROSS MOTION

other sources. But for the fortuitous forwarding of Judge Cebull's email about President Obama and the ensuring complaint by Chief Judge Theodore A McKee of the Third Circuit, these emails may never have seen the light of day and Judge Cebull might still be ruling from the bench. These facts satisfy the requirements of Rule 27 and Petitioners respectfully request this Court to issue an order preserving the emails. In addition, what interest could possibly be served by denying the instant request? Is Judge Cebull's racist legacy to be forgotten like the names of racist White Citizen Councils throughout the South who subjugated African American citizens for decades? Again, this Court has the power to make sure that these acts are not forgotten and that justice is finally achieved in Montana courts for those who suffered under Judge Cebull.

### I.  The Court Has Inherent Authority to Order the Emails Preserved

The Court has inherent authority to issue an injunction to preserve evidence where a cognizable claim can be made and the interests of justice so require. This goes to the very basic power of the judiciary. In the instant situation, the emails are apparently within the geographic jurisdiction of this Court and in the interests of justice and to preserve the integrity of the judiciary, the Court should issue such and injunction.

Petitioners incorporates by reference the prior arguments it made in response to Respondent's other Rule 27 arguments.

**CONCLUSION**

Respondents do not deny they have care, custody and control over Judge Cebull's racist, sexist, biased emails. Petitioners respectfully request this Court to issue an order preserving these emails.

Respectfully submitted,

DATED: December 23, 2014     **CALIFORNIA CIVIL RIGHTS LAW GROUP**
                             /s/ Lawrence A. Organ
                             Lawrence A. Organ, Esq.
                             Attorneys for Petitioners
                             Four Directions et al.

9

PETITIONER FOUR DIRECTIONS ET EL, REPLY AND OPPOSITION TO CROSS MOTION