LAWRENCE A. ORGAN (SBN 175503)
JULIANNE K. SCHWARZ (SBN 290001)
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
407 San Anselmo Avenue, Suite 201
San Anselmo, CA 94960
Tel. (415) 453-4740
Fax (415) 785-7352

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOUR DIRECTIONS, ET AL.,<br><br>Petitioners,<br><br>vs.<br><br>COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, The Office of the Circuit Executive Cathy A. Catterson, Circuit and Court of Appeals Executive, U.S. Courts for the Ninth Circuit,<br><br>Respondents. | **Case No.:** 4:14-cv-03022-YGR<br><br>**PETITIONER'S SUPPLEMENTAL BRIEF IN RESPONSE TO COURT'S QUESTIONS**<br><br>Date: February 11, 2015<br>Time: 2:00 p.m.<br>Place: Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, California<br><br>Honorable Yvonne Gonzalez Rogers |

Petitioners submit this supplemental brief in response to the Court's order (ECF No. 43) filed January 26, 2015, directing the parties to answer certain questions.

## I. Mechanism for Discovery (Question 1)

The Ninth Circuit has explained that, "in this circuit, we start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mutual Auto. Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir.2003). This strong presumption only may be overcome on a showing of "compelling reasons," *Foltz*, 331 F.3d at 1135, (holding that closure is only permissible in an articulated specific, on-the-record findings that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id., quoting Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 9, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).

In this matter, it cannot seriously be argued that Judge Cebull's personal prejudices and highly inappropriate remarks sent in emails *from his Court-provided email address from a government computer* constitute such a "compelling interest." The United States Code, in one of the provisions related to disclosure of information giving rise to a finding of judicial misconduct, states that "[I]f the Judicial Conference concurs in the determination of the judicial council, or makes its own determination, that consideration of impeachment *may* be warranted…[the Clerk of the House of Representatives] *shall* make available to the public the determination *and any reasons for the determination.* 28 U.S.C. § 355(b)(1).

Importantly, Petitioners' request for preservation does *not*, at this time, demand immediate disclosure of the hundreds of emails the Judicial Conference found objectionable to the point of supporting a finding of judicial misconduct. Rather, this Petition is limited to the simple preservation of such documents, such that briefing on the actual disclosure of them may occur at a later date. To quote the Judicial Conference with respect to its investigation of a judicial officer in this

1
PETITIONER FOUR DIRECTIONS ET EL, SUPPLEMENTAL BRIEF

District, "what's done cannot be undone." *Perry v. City & County of San Francisco*, Not Reported in F.3d, 2011 WL 2419868 (9th Cir. 2011) at 5. So too, the non-preservation of evidence forever ensures that any bias or prejudice on the part of Judge Cebull which may have influenced his rulings relating to Petitioners will be kept secret and cloistered, in direct contravention of this Nation's reliance on an impartial and fair Judiciary.

Under the First Amendment to the United States Constitution and the federal common law, court proceedings and records are presumptively open to the public. *E.g. Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980)(right of public/press access applies to criminal trials); *see also CBS, Inc. v. United States District Court,* 765 F.2d 823, 825 (9th Cir.1985)(" *CBS II* ")("[t]he right of access is grounded in the First Amendment and in common law, and extends to documents filed in pretrial proceedings as well as in the trial itself") (citation omitted).

As the United States Supreme Court has noted, "[f]or many centuries, both civil and criminal trials have traditionally been open to the public. As early as 1685, Sir John Hawles commented that open proceedings were necessary so 'that the truth may be discovered in civil as well as criminal matters.' " *Gannett Co. v. DePasquale,* 443 U.S. 368, 386 n. 15, (1979), *citing Remarks upon Mr. Cornish's Trial,* 11 How. St. Tr. 455, 460. This tradition of openness "is no quirk of history; rather it has long been recognized as an indispensable attribute of an Anglo–American trial." *Richmond Newspapers,* 448 U.S. at 569, 580 n. 17 (noting that "historically both civil and criminal trials have been presumptively open").

Judge Cebull was obligated to "respect and comply with the law and [to] act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Code of Conduct for United States Judges, Canon 2A; *see also* Ninth Circuit Rules of Judicial Conduct art. I, § 3(h)(2) (judge

engages in "[c]ognizable misconduct" if his "conduct occurring outside the performance of official duties ... might have a prejudicial effect on the administration of the business of the courts, including a substantial and widespread lowering of public confidence in the courts among reasonable people"); *cf. United States v. Lang,* 364 F.3d 1210, 1212, 1221–22 (10th Cir.2004) (court clerk who "took home" copy of "sealed affidavit" convicted under 18 U.S.C. § 2071(a)), *vacated on other grounds,* 543 U.S. 1108, (2005), *reinstated in relevant part,* 405 F.3d 1060, 1061 (10th Cir.2005).

The Judicial Conference *specifically relied* upon its own review of Judge Cebull's inappropriate emails to render its finding that Judge Cebull engaged in judicial misconduct. As a result, Judge Cebull has "'engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts.'" *In re Complaint Against District Judge Joe Billy McDade,* No. 07–09–90083 (7th Cir. Sept. 28, 2009) (Easterbrook, C.J.) (quoting 28 U.S.C. § 351(a)).

Indeed, the Judicial Conference, even in finding that a judicial officer's conduct did not –however repugnant – constitute judicial misconduct, held that the "Chief circuit judge's retention of e-mail containing sexually explicit material in subdirectory of his *personal computer*…created public controversy resulting in embarrassment to the federal judiciary, in contravention of Code of Conduct for United States Judges." *In Re Complaint of Judicial Misconduct.,* 585 F.3d 279, 291-292 (3rd Cir. 2009). Thus, it can hardly be argued that Judge Cebull's emails – which were found to constitute misconduct – are neither relevant to Petitioners' potential claims nor, at least, the subject of a preservation order by this Court.

Finally, this Circuit in particular has fastidiously safeguarded the public's access to judicial documents, even in cases where documents were filed under seal, for the protection of a *private party*. *Foltz,* 331 F.3d at 1155 (stating that "in this circuit, we start with a strong presumption in favor of access to court records" and

extending the common law right of public access to civil court documents that are filed under seal); *see also Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1183-85 (9th Cir. 2006) (finding that documents related to investigation of alleged police corruption could not be retained under seal based on a blanket protective order, especially in the absence of "compelling reasons sufficient to outweigh the public's interest in disclosure" and *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (extending common law rights of access to pretrial court documents in civil sexual abuse cases).). Indeed, as our Supreme Court noted, public access to court proceedings "allows the public to participate in and serve as a check upon the judicial process – an essential component in our structure of self-government." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982). The Court reiterated the declaration of celebrated jurist Oliver Wendall Holmes, stating that "the trial of [civil] causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley v. Pulsifer,* 137 Mass. 392, 394(1884).

It cannot be that a member of the Federal Judiciary, who has undertaken an oath of public service, and thus subjected himself or herself to the corresponding public scrutiny, has a higher right to privacy – particularly with regard to emails sent from a United States government email account – than a private citizen.

## II. Avenue for Relief (Question 2)

Petitioners may not seek relief for any prejudice resulting from Judge Cebull's rulings and/or orders by filing a judicial complaint of misconduct. *Green v. Seymour* 59 F.3d 1073 (10th Cir. 1995).

Indeed, Petitioners' avenues of potential relief stem primarily from Federal Rule of Civil Procedure 60, the Advisory Comments to which provide that:

> The reconstruction of Rule 60(b) has for one of its purposes a clarification of this situation. Two types of procedure to obtain relief from judgments are specified in the rules as it is proposed to amend them. One procedure is by motion in the court and in the action in which the judgment was rendered. The other procedure is by a new or independent action to obtain relief from a judgment, which action may or may not be begun in the court which rendered the judgment. Various rules, such as the one dealing with a motion for new trial and for amendment of judgments, Rule 59, one for amended findings, Rule 52, and one for judgment notwithstanding the verdict, Rule 50(b), and including the provisions of Rule 60(b) as amended, prescribe the various types of cases in which the practice by motion is permitted. In each case there is a limit upon the time within which resort to a motion is permitted, and this time limit may not be enlarged under Rule 6(b). If the right to make a motion is lost by the expiration of the time limits fixed in these rules, the only other procedural remedy is by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action. Where the independent action is resorted to, the limitations of time are those of laches or statutes of limitations. The Committee has endeavored to ascertain all the remedies and types of relief heretofore available by *coram nobis, coram vobis, audita querela*, bill of review, or bill in the nature of a bill of review. See Moore and Rogers, *Federal Relief from Civil Judgments* (1946) 55 Yale L.J. 623, 659–682. It endeavored then to amend the rules to permit, either by motion or by independent action, the granting of various kinds of relief from judgments which were permitted in the federal courts prior to the adoption of these rules, and the amendment concludes with a provision abolishing the use of bills of review and the other common law writs referred to, and requiring the practice to be by motion or by independent action.

Alternatively Petitioners' other potential avenue for relief are a potential writ for mandamus (*see Cord v. Smith*, 338 F.2d 516, 521 (9th Cir. 1964) (*see also State Highway Comm'n v. Volpe*, 479 F.2d 1099., 1104, n.6 (8th Cir. 1973) (holding that mandamus is particularly appropriate in circumstances where a litigant claims that an inferior court acted outside the scope of its power), or, alternatively, a *habeas corpus* petition. Finally, Petitioners assert that they have a right to challenge the

5
PETITIONER FOUR DIRECTIONS ET EL, SUPPLEMENTAL BRIEF

policy of nondisclosure as violative of the First Amendment freedom of the press and the Fifth Amendment right to due process.

Regardless of the specific avenue Petitioners pursue in seek of relief, it will be imperative that Petititoners retain the right to seek discovery related to this relief, just as Petitioners would be entitled to discovery if they were to seek a relief from a private party. Indeed, where the Federal Judiciary is concerned, it can be argued that *preservation*, at least, of acts and conduct of the Judiciary should be maintained in the highest manner, regardless of whether the Court determines disclosure is ultimately appropriate in such circumstances.

### III. Why Petitioners Have Not Yet Moved

Respondent has continually argued that Petitioner's case lacks merit. It has filed two motions to dismiss and argues in its papers that absolute confidentiality the rule and not the exception. Accordingly, Petitioners seek the remedy at hand to avoid any claim by the government that Petitioners have failed to perform due diligence under Rule 11 before filing any request for relief. Accordingly, disclosure of the emails is extremely important to ensuring justice is served.

Respectfully submitted,

DATED: February 2, 2015   **CALIFORNIA CIVIL RIGHTS LAW GROUP**

/s/ Lawrence A. Organ
Lawrence A. Organ, Esq.
Attorneys for Petitioners