United States District Court
Northern District of California

1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4

5   **FOUR DIRECTIONS, ET AL.,**                Case No.  14-cv-03022-YGR

                    Petitioners,
6                                               **ORDER GRANTING IN PART FIRST**
7          v.                                   **AMENDED PETITION AS TO PRESERVATION**
                                                **OF EMAILS ONLY**
8   **COMMITTEE ON JUDICIAL CONDUCT AND**
    **DISABILITY OF THE JUDICIAL CONFERENCE**
9   **OF THE UNITED STATES, ET AL.,**

                    Respondents.
10

          Petitioners Four Directions, Indian People's Action, Sara Plains Feather, and Clifford Bird
11
In Ground ("Petitioners") filed their First Amended Pre-Complaint Petition to Preserve Evidence
12
pursuant to Federal Rule of Civil Procedure 27(a)(1) on November 14, 2014.  (Dkt. No. 34,
13
"FAP".)  Although the FAP sought additional relief, in their briefing, Petitioners narrowed their
14
request and now seek only an order directing Respondents Committee on Judicial Conduct and
15
Disability of the Judicial Conference of the United States ("the USJCD Committee") and Cathy A.
16
Catterson, in her official capacity as representative of the Office of the Circuit Executive
17
(collectively, "Respondents") to preserve emails uncovered in the Ninth Circuit's investigation of
18
judicial misconduct complaints against now-retired federal Judge Richard Cebull.  Respondents
19
have objected to the entirety of the FAP and moved to dismiss it.  (Dkt. No. 35.)  Through this
20
process, and the Court's inquiry, the Respondents have confirmed that, under Ninth Circuit policy,
21
the subject emails in the Ninth Circuit's investigatory files are to be preserved until January 18,
22
2019.
23
          The Court, having carefully considered the parties' briefing, arguments, and the relevant
24
legal authorities, **ORDERS** as follows: given the unusual posture of this case and the Court's broad
25
discretion in fashioning appropriate relief, the Court **GRANTS** that portion of Petitioners' request
26
for preservation of the emails at issue and **ORDERS** that Respondents take all necessary steps to
27
preserve the emails at issue, in accordance with Ninth Circuit policy, until **January 18, 2019**.
28

1    However, given the breadth of the FAP as pleaded, the Court **DENIES** the balance thereof, since it

2    fails to establish all elements of Rule 27(a)(1)**.**

3    **I.    BACKGROUND**

4        **A.    The Underlying Facts**

5        The following recitation of the facts is drawn from the Memorandum of Decision filed

6    January 17, 2014, by the USJCD Committee on Proceedings In Review of the Order and

7    Memorandum of the Judicial Council of the Ninth Circuit on Judicial Council matter numbers 09-

8    12-90026 and 09-12-90032.

9        On March 1, 2012, a Complaint of Judicial Misconduct, Docket No. 09-12-90026, was

10   opened in the Ninth Circuit Judicial Council at the request of Judge Richard Cebull, then Chief

11   District Judge for the District of Montana, under the Judicial Conduct and Disability Act of 1980,

12   28 U.S.C. §§ 351-364 ("the Act") and Rules for Judicial-Conduct and Judicial-Disability

13   Proceedings, 248 F.R.D. 674 (U.S. Jud. Conf. 2008) ("the JCD Rules").  Judge Cebull requested

14   an inquiry regarding his February 20, 2012, transmittal of an email.

15       This complaint, and other related complaints, arose from a February 2012 incident in

16   which Judge Cebull, using his court email account, forwarded to a number of recipients an email

17   message that made a joke with racial implications involving the President of the United States,

18   Barack Obama.  The incident gave rise to substantial public and press outcry, and a call by

19   members of the United States Congress for an investigation and Judge Cebull's resignation.  Judge

20   Cebull, in response, sent a letter of apology to President Obama, and asked Ninth Circuit Chief

21   Judge Alex Kozinski to initiate an inquiry into the incident.  This inquiry became Complaint 09-

22   12-90026 and was referred to the Ninth Circuit Judicial Council.  Chief Judge Kozinski also

23   referred Complaint No. 09-12-90032, filed by Third Circuit Chief Judge Theodore A. McKee and

24   arising out of the same events, for inclusion in the Ninth Circuit Judicial Council's investigation.[1]

25

26       [1]  Ten additional complaints were filed, and the Ninth Circuit Judicial Council held them in
     abeyance pending the investigation into Judge Cebull's and Judge McKee's complaints.  Under
27   the USJCD Committee's January 17, 2014 Decision, the resolution of these complaints was left to
     the Ninth Circuit chief judge and Ninth Circuit Judicial Council to resolve.  (January 17, 2014
28   Decision, Dkt. No. 1-3, at 12.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In accordance with JCD Rule 11(f), Chief Judge Kozinski referred the Cebull and McKee

2    complaints to a five-judge special investigating committee of the Ninth Circuit Judicial Council,

3    which took testimony and reviewed emails, documents, and statistics.

4           Upon conclusion of the special committee's investigation, on March 15, 2013, the Ninth

5    Circuit Judicial Council issued an order disposing of the complaints.  The March 15, 2013 Order

6    detailed the special committee's findings of judicial misconduct.  The Ninth Circuit Judicial

7    Council found "hundreds of inappropriate email messages that were received and forwarded from

8    Judge Cebull's court email account," many of which showed disdain and disrespect based upon

9    race/national origin (African American, Latino, and Native American), religion, sexual

10   orientation, and gender.  (USJCD Committee's Memorandum of Decision, dated January 17, 2014

11   [attaching Ninth Circuit Judicial Council Order and Memorandum filed March 15, 2013], Exh. A

12   to original petition, Dkt. No. 1-3, at 6-7.)  The March 15, 2013 Order of the Ninth Circuit Judicial

13   Council found that Judge Cebull's conduct was "'prejudicial to the effective administration of the

14   business of the courts' under 28 U.S.C. § 351," "contrary to the Code of Conduct for United States

15   Judges," and had violated Canon 2 of the Code of Conduct (judges should "avoid impropriety and

16   the appearance of impropriety") and Canon 5 of the Code of Conduct (prohibiting political

17   activity).

18          The March 15, 2013 decision included a public reprimand, an order that no new cases be

19   assigned to Judge Cebull for 180 days, and an order that Judge Cebull complete training on

20   judicial ethics, racial awareness, and elimination of bias "[t]o restore the public's confidence that

21   any possible conscious or unconscious prejudice will not affect future decisions."  (Ninth Circuit

22   Judicial Council Order and Memorandum, Dkt. No. 1-3, at ¶ 3, p. 15.)  The March 15, 2013 Order

23   described Judge Cebull's past email practices, as discovered by the special committee, and

24   "strongly condemn[ed]" them.  (*Id.* at ¶ 4, p. 16.)  The order also condemned Judge Cebull's initial

25   public apology as "insufficient to acknowledge fully or redress his past actions and the totality of

26   his discriminatory emails," and required that he "issue a second public apology, approved by the

27   Judicial Council" that would "acknowledge the breadth of his behavior and his inattention to

28   ethical and practical concerns surrounding personal email."  (*Id.*)  In addition, the Ninth Circuit

United States District Court
Northern District of California

1   Judicial Council ordered that "[a]ll parties and attorneys involved in cases assigned to Judge

2   Cebull may move to recuse him based on conduct or concerns arising out of this Order or claims

3   related to any of the categories of individuals or groups referenced in the Order."  (*Id.* at ¶ 5, pp.

4   16-17.)

5          Two members of the Ninth Circuit Judicial Council, Chief District Judge Wilken and

6   District Judge Ishii, wrote a concurring statement that "the Judicial Council should request that

7   Judge Cebull voluntarily retire from the judiciary under 28 U.S.C. § 371(a) in recognition of the

8   severity of his violation and the breadth of the public reaction."[2]

9          Under Rule 20(f), the March 15, 2013 Order was set to be published on May 17, absent

10   any petition for review.  Under that same rule, a copy of the order was sent to Judge Cebull and to

11   Chief Judge McKee.

12          On April 2, before the March 13, 2013 Order was published, the Ninth Circuit Judicial

13   Council announced through its public website that Judge Cebull had decided to retire effective

14   May 3, 2013.  On May 3, the Ninth Circuit Chief Judge posted on the court's public website the

15   following announcement: "The [Ninth Circuit] Judicial Council now finds it necessary to review

16   the procedural status and will consider the matter at its next regular meeting, scheduled for June

17   28, 2013."  On May 13, the Ninth Circuit Judicial Council issued an order vacating the March 15,

18   2013 Order as moot in light of Judge Cebull's retirement, and stating that it would "consider

19   appropriate revisions" at a forthcoming meeting scheduled for June 28, 2013.

20          On May 16, Chief Judge McKee filed a petition for review asking the USJCD Committee

21   to review the May 13 vacatur.  The Ninth Circuit Judicial Council responded to that petition by

22   asserting that an appeal was not proper because its order was not yet final and the March 15, 2013

23   Order had been vacated.

24          On July 2, 2013, the Ninth Circuit Judicial Council issued a final order that "dismissed the

25

26   _____

27   [2] The March 15, 2013 Order noted that the special committee investigated Judge Cebull's
     cases, including dispositions of labor, employment, civil rights and prisoner rights matters,
28   criminal sentencing, and appeals, and found no evidence of bias in his rulings or sentencing
     practices, and no cases that were "troubling."

4

United States District Court
Northern District of California

1    complaints as moot," and declared the proceedings concluded due to Judge Cebull's retirement.

2    This truncated version of the March 15, 2013 Order omitted the information about the nature of

3    the hundreds of inappropriate email messages that had been uncovered in the investigation and

4    other details of the sanctions against Judge Cebull.

5          Thereafter, on July 23, 2013, Chief Judge McKee filed a new petition for review with the

6    USJCD Committee, incorporating the first petition by reference and requesting review of the July

7    2 order of the Ninth Circuit Judicial Council.

8          The USJCD Committee issued a memorandum of decision on January 17, 2014.  In that

9    decision, the USJCD Committee ordered the March 15, 2013 Order published.  It further found

10   that the Ninth Circuit Judicial Council, in this instance, misapplied the Act and the JCD Rules by

11   invoking Judge Cebull's retirement as an "intervening event" warranting vacatur of the March 15,

12   2013 Order and dismissal of the complaints as "moot."  The USJCD Committee found that, while

13   Judge Cebull's retirement affected the prospective sanctions imposed by the March 15, 2013

14   Order, it did not relieve the Ninth Circuit Judicial Council from the requirement to publish its

15   factual findings and legal conclusions on misconduct.

16         **B.**     **The Petition Before This Court**

17         On July 1, 2014, Petitioners filed a Pre-Complaint Petition to Preserve Evidence pursuant

18   to Rule 27(a)(1), seeking production of the investigation file and all documents obtained therein

19   and identification of persons who worked on the investigation conducted by the Ninth Circuit

20   Judicial Council's special committee.  (Original Petition, Dkt. No. 1.)  Respondents filed a motion

21   to dismiss which the Court granted with leave to amend by order issued October 28, 2014.  (Dkt.

22   No. 32.)  On November 14, 2014, Petitioners filed a substantially amended FAP.  (Dkt. No. 34.)

23   The FAP added a new petitioner, Clifford Bird In Ground, and new allegations that specific

24   petitioners had been litigants before Judge Cebull.  The FAP also amended the relief sought to a

25   request that Respondents preserve all of the investigatory file ("notes, records, interviews, subject

26   emails, etc.") and disclose a list of all persons who worked on the investigatory file.  (*Id.* at 10.)

27   Through the briefing on Respondents' motion to dismiss, Petitioners further narrowed the scope of

28   the relief.  In their opposition, Plaintiffs limited the scope of the relief sought to an order requiring

1    Respondents to preserve emails to and from Judge Cebull, so that they might be obtained in

2    connection with future proceedings.  (Plaintiffs' Oppo., Dkt. No. 37, at p.1, fn.1.)

3           Petitioner Four Directions is a non-profit advocacy program for Native Americans

4    involved in economic development, civil rights, and voting rights issues.  (FAP ¶ 8.)  The FAP

5    alleges that some of its members "may have habeas or other 28 U.S.C. § 2255 claims that are

6    running."  (FAP ¶ 8.)  Petitioner Indian People's Action ("IPA") is a credentialed advocacy

7    program for Native Americans, and alleges that some of its members may have habeas or other 28

8    U.S.C. § 2255 claims that are running.  (FAP ¶ 9.)

9           Petitioner Sarah Plains Feather is a member of Four Directions, an enrolled member of the

10   Crow Tribe, and a former litigant before Judge Cebull.  (FAP ¶¶ 8, 11.)  Petitioner Clifford Bird in

11   Ground is a Tribal Chairman of the Crow Tribe, which tribe is represented by Petitioners Four

12   Directions and IPA, who appeared before Judge Cebull in criminal proceedings.  (FAP ¶ 12.)

13          Petitioners allege they have been affected adversely by Judge Cebull's biased views.  (FAP

14   ¶ 4.)  Petitioner Four Directions alleges that Judge Cebull adversely decided a case concerning

15   voting rights of its members, in which he determined that the number of polling places provided to

16   Native American voters was sufficient despite the fact that many members had to drive in excess

17   of two hours simply to cast their ballots.  (FAP ¶ 8.)  Petitioners contend this decision was in

18   violation of their Due Process and Equal Protection rights in that it denied them equal access to the

19   polls.  (*Id.*)  Petitioners also allege that Judge Cebull decided a water rights case against a Native

20   American tribe, impairing tribal members' water rights, and that such decision may have been due

21   to his bias and disregard of Constitutional Due Process and Equal Protection protections.  (*Id.*)

22          Petitioner Plains Feather alleges that Judge Cebull's decision to dismiss her litigation

23   pending before him in *Sara Plains Feather v. Montana Department of Commerce,* CV-T-1070-

24   RFC, was racially motivated.  (FAP ¶ 11.)

25          Petitioner Bird In Ground alleges that he was convinced to plead guilty to a crime he did

26   not commit and Judge Cebull refused to permit him to withdraw his plea agreement despite

27   evidence of his innocence.  (FAP ¶ 12.)  With respect to Petitioner Bird In Ground, the FAP

28   alleges:

United States District Court
Northern District of California

6

[he] spent three and a half years and three trips to the Ninth Circuit trying to withdraw his uninformed guilty plea made to Judge Cebull and have a trial.  Clifford Bird In Ground understood written English at a fourth grade level.  Judge Cebull's possible bias against Native Americans and his relationships with the U.S. Prosecutor may have influenced Judge Cebull's decisions in Clifford Bird In Ground's long journey to prison.  Mr. Bird In Ground believes his constitutional rights to Due Process and Equal Protection were violated as part of this process and that he was the victim of racial and national origin discrimination.

(FAP ¶ 12.)

Despite the fact that more than a year has passed since the USJCD Committee's decision, the FAP alleges that Petitioners "plan to file a cognizable claim but cannot presently do so… because, among other factors, [the notes, records, interviews, subject emails, etc. in the investigatory file have] not been made public."  (FAP ¶ 6.)  Petitioners recently verified, at the hearing on the FAP, that no actions had yet been filed.  No additional reasons are offered as to why Petitioners have not brought any action for relief thus far.

## III.   FEDERAL RULE UNDER WHICH PETITION IS BROUGHT

Petitioners seek to an order under Rule 27 of the Federal Rules of Civil Procedure.  Rule 27(a), concerning perpetuation of evidence prior to filing of a complaint, reads in pertinent part:

> A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides.  The petition must ask for an order authorizing the petitioner to depose the named persons in order to perpetuate their testimony.  The petition must be titled in the petitioner's name and must show:
>
> (A)   that the petitioner expects to be a party to an action cognizable in a United States court but cannot presently bring it or cause it to be brought;
> (B)   the subject matter of the expected action and the petitioner's interest;
> (C)   the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate it;
> (D)   the names or a description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as known; and
> (E)   the name, address, and expected substance of the testimony of each deponent.

United States District Court
Northern District of California

7

1     Fed. R. Civ. Pro. 27(a).  Rule 27(a)(3) requires that a court, "[i]f satisfied that perpetuating the

2     testimony may prevent a failure or delay of justice," issue an order setting forth the specifics of

3     depositions to be taken.  Rule 27(a)(3) also clarifies that the court may issue orders similar to

4     those authorized by Rules 34 and 35 concerning production of documents or examinations.  The

5     Ninth Circuit has held that this addition to Rule 27 is meant to permit perpetuation of evidence

6     even when a deposition is not necessary and the "only thing likely to be lost or concealed is a

7     paper or object that should be subject to inspection, etc., under Rule 34." *Martin v. Reynolds*

8     *Metals Corp.*, 297 F.2d 49, 56 (9th Cir. 1961).  There is a "wide discretion lodged in the trial

9     judge" in issuing orders under Rule 27.  *Id.* at 57.  "Of course, the showing required by Rule 27

10    must first be made before Rule 34 comes into play.  But once that showing is made, then the rule

11    of liberal construction should apply."  *Id.* at 56.  Accordingly, the "wide discretion" vested in the

12    court suggests that an order to preserve, rather than produce, documentary evidence would fall

13    within the broad authority of the rule in certain circumstances.

**IV.    DISCUSSION**

15         The First Amended Petition, as pleaded, does not satisfy all the requirements of Rule 27.

16    Petitioners have failed to set forth, in more than a vague, generalized way, the cognizable federal

17    action or actions they expect to bring and *the reasons* the actions cannot be, or have not been,

18    brought presently.  Fed. R. Civ. Pro. 27(a)(1)(A).  Petitioners also fail to allege the "names or a

19    description of the persons whom the petitioner expects to be adverse parties and their addresses, so

20    far as known."  Fed. R. Civ. Pro. 27(a)(1)(D).

21         Though they have not met all the requirements of Rule 27 for perpetuation of evidence

22    prior to filing of a complaint, Petitioners nevertheless may be able to file some cognizable action

23    based on the underlying allegations in the FAP.  The United States Supreme Court, in its 2009

24    *Caperton* decision, held that a judge's failure to recuse himself, under circumstances evidencing

25    bias due to receipt of significant campaign contributions from a litigant, violated notions of due

26    process and warranted reversal of his decision.  *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868,

27    885, 890 (2009); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)

28    (affirming decision to vacate judgment under Rule 60(b) in the interests of justice due to judge's

United States District Court
Northern District of California

1   failure to recuse himself in violation of 28 U.S.C. § 455).  As Respondents have acknowledged in

2   their supplemental briefing, Petitioners or others believing that some decision of Judge Cebull

3   ought to be reviewed in light of the information in the USJCD Committee's decision might be able

4   to bring a proceeding or seek relief in federal court under, for example, 28 U.S.C. sections 2241 or

5   2255; under Rule 33 of the Federal Rules of Criminal Procedure; under Rule 60 of the Federal

6   Rules of Civil Procedure; or through a writ of error *coram nobis*.[3]

7   　　　　Notwithstanding the foregoing, Respondents have argued separately that the emails are

8   confidential and prohibited from disclosure pursuant to 28 U.S.C. section 360(a).  The question of

9   whether the emails in Respondents' investigatory files might be discoverable in some later

10   proceeding, or whether Section 360[4] would shield all evidence gathered in Respondents' files, is

11   no longer before the Court in the FAP.  The Court therefore declines to rule on Respondents'

12   objection on these grounds.

13   　　　　While not ruling on that issue, the Court did inquire regarding Respondents' document

14   preservation policies.  In response to the Court's inquiry, Respondents filed a brief on February

15   26, 2015, stating that the emails gathered in the investigative file will be retained until January 18,

16   2019, under the Records Management Provisions in the Guide to Judiciary Policy, Volume 10,

17   Chapter 6, App'x 6A, pp. 4-5.  (*See* Dkt. No. 51, Exh. A.)  Thus, the emails at issue would be

18   preserved in the event of future litigation in which their production was required.  As stated above,

19

20   　　　[3] Any lawsuit against Judge Cebull directly would be barred by absolute judicial

21   immunity.  *See Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1394 (9th Cir. 1987).  Likewise, quasi-judicial immunity would extend to Respondents here for actions taken in

22   connection with the investigation of the misconduct complaints against Judge Cebull.  And federal jurisdiction would require that any claimant have standing to seek relief.  *See Washington*

23   *Environmental Council v. Bellon,* 732 F.3d 1131, 1139 (9th Cir. 2013).

24   　　　[4] 28 U.S.C. section 360 provides, in part:

25   　　　(a) Confidentiality of proceedings.**--**Except as provided in section 355, all papers, documents, and records of proceedings related to investigations conducted under this

26   chapter shall be confidential and shall not be disclosed by any person in any proceeding except [where the judicial council releases a copy of the investigation

27   report to the complainant and the judge investigated; for purposes of an impeachment investigation; or as authorized by the subject judge and the chief judge of the circuit or

28   Chief Justice].

1    given the Court's wide discretion, the Court finds it appropriate to order that Respondents take

2    steps to ensure that they comply with this policy and preserve the subject emails until January 18,

3    2019.

4    **IV.    CONCLUSION**

5         All judges take an oath to uphold the Constitution and to administer justice impartially.

6    The inquiry starts from a "presumption of honesty and integrity in those serving as adjudicators."

7    *Withrow v. Larkin,* 421 U.S. 35, 47 (1975).  In an "exceptional case" where the facts suggest a

8    "serious risk of actual bias [ ] based on objective and reasonable perceptions," the Constitution's

9    guarantee of due process may require the recusal of the judge presiding over a matter.  *Caperton,*

10   556 U.S. at 884.

11        The question presently before the Court, however, is not whether such an exceptional case

12   eventually might be presented by Petitioners, but whether the First Amended Petition meets the

13   requirements of Rule 27.  Despite having been given an opportunity to amend their petition,

14   Petitioners have not met those requirements.  Petitioners have not identified the reasons their

15   expected actions cannot be brought or identified the names and other information of persons they

16   expect to be adverse in those actions.  Accordingly, the Court **DENIES** the more extensive scope of

17   relief sought in the FAP on those grounds.  However, under the Court's exercise of its discretion,

18   and in the interests of justice, the Respondents are **ORDERED** to preserve the documents until

19   **January 18, 2019**, as they have represented they are required to do under applicable Judiciary

20   Policy provisions.

21        This Order terminates the action.  The Clerk is directed to close the file.

22        **IT IS SO ORDERED.**

23   Dated: March 18, 2015

24   _____
     **YVONNE GONZALEZ ROGERS**
25   **UNITED STATES DISTRICT COURT JUDGE**

26

27

28

United States District Court
Northern District of California

10